UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHARLOTTE F. BRIDGES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-183 |
| | ) | (VARLAN/SHIRLEY) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Plaintiff Charlotte F. Bridges seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On March 15, 2011, Plaintiff protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") with an alleged onset date of July 15, 2010. [Tr. 125-36, 148]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 73-78]. Plaintiff timely filed a request for a hearing, and she appeared before Administrative Law Judge, James Dixon, on November 7, 2012 in Knoxville, Tennessee. [Tr. 79-80; 31]. The ALJ issued an unfavorable decision on February 5, 2013. [Tr. 10-30]. Plaintiff requested review of the decision, which the Appeals Council

declined on March 25, 2014. [Tr. 7-9, 1-6].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 7, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

**I.      ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since July 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: anxiety related disorders (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is capable of lifting/carrying up to 10 pounds occasionally and 20 pounds frequently. She can sit up to four hours at one time without interruption, and a total of 6 hours out of an 8-hour workday with normal breaks. She can stand/walk for 30 minutes at one time without interruption, and a total of 2 hours out of an 8-hour workday with normal breaks. She can perform frequent reaching all directions, frequent handling, fingering, feeling, pushing/pulling and occasional operation of foot controls. All postural activities are occasional, except no climbing ladders, ropes, or scaffolds. She has no visual or communicative limitations. She can have frequent exposure to humidity and wetness but no exposure to unprotected heights, moving

2

mechanical parts, operation of a motor vehicle. The claimant is able to understand & remember for the performance of simple and multistep (1 to 4 step) higher-level detailed tasks, but cannot make independent decisions at an executive level. She is able to maintain concentration, persistence and pace for simple tasks, low-level detailed tasks, but not for higher-level multistep detailed tasks, without significant difficulty, with customary breaks and within the previously described restrictions. She is unable to interact effectively with the general public but able to interact appropriately with coworkers and supervisors. The claimant would work better with things rather than with people. She is able to adapt to change and set goals independently within the previously described restrictions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 27, 1979 and was 31 years old, which is defined as a "younger individual" age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, since July 15, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-25].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his

4

> impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)

(quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

6

On review, Plaintiff bears the burden of proving his entitlement to benefits. <u>Boyes v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

Plaintiff protectively filed an application for DIB and SSI on March 15, 2011. [Tr. 148]. She received a GED in 2006 and was thirty one years old at the time of her application. [<u>Id.</u>, Tr. 165]. Plaintiff has past relevant work experience as a fast food worker and material handler. [Tr. 165]. Plaintiff reported that she ceased work on July 15, 2010 due to anxiety, post-traumatic stress disorder ("PTSD"), obsessive compulsive disorder ("OCD"), and phobias. [Tr. 164].

Plaintiff was in a motor vehicle accident in 2007. [Tr. 215]. She reported that she sustained a concussion, was driven to the emergency room by her husband, and subsequently discharged. [Tr. 40-41, 215]. MRI's taken following her accident revealed normal brain and cervical spine impressions with evidence of scoliosis from images taken of Plaintiff's chest. [Tr. 308, 314-15]. Plaintiff received treatment at Tennessee Orthopaedic Clinic following her accident. [Tr. 269]. Dr. Wilson noted that Plaintiff had anxiety regarding the accident but that she did "not appear to have sustained any serious injury." [Tr. 270]. She was referred to Clinton Physical Therapy Center. [<u>Id.</u>].

On January 28, 2011, Plaintiff reported to Park Med Ambulatory Center complaining of anxiety following another motor vehicle accident in November of 2010. [Tr. 323]. She was diagnosed with PTSD and OCD and advised to seek psychiatry care. [<u>Id.</u>]. Plaintiff received psychiatric treatment at Ridgeview Psychiatric Hospital throughout 2011 for anxiety and PTSD. [Tr. 394-425, 491-96, 521-27]. Throughout October and November 2011, Plaintiff reported that

7

she had not refilled her Zoloft prescription due to financial strain. [Tr. 522-26]. She also cancelled an appointment because she didn't "'have the gas money to come down there.'" [Tr. 524]. On November 22, 2011, Plaintiff's therapist informed her that "she is more capable than she acknowledges. Therapist pointed to recent behaviors, i.e. she drove herself to the grocery store." [Tr. 523].

Plaintiff was treated at Cumberland Neurology Group in October of 2011. [Tr. 499-500]. Dr. James Lynch noted that Plaintiff had "electrodiagnostic studies that were entirely normal in the lower extremities for bilateral lower extremity pain and swelling complaints." [Tr. 500]. However, Dr. Lynch noted Plaintiff's "intense complaints of hopelessness and worthlessness" with suicidal ideations. [Id.]. Plaintiff reported that she had been unable to fill her psychiatric medications due to "competing concerns with regard to paying for medicines vs. paying her mortgage." [Id.]. Dr. Lynch found that Plaintiff required "ongoing effective psychiatric management." [Id.].

Plaintiff received treatment for low back and knee pain from Tennessee Orthopaedic Clinic in 2011 and 2012. [Tr. 511-20, 528-29]. By January 20, 2012, Plaintiff demonstrated an "excellent range of motion of both knees. She does have slight lateral tilt, possibly lateral subluxation in both patellas, slight crepitus right more than left with flexion extension. No increased warmth, swelling, effusion or ecchymosis." [Tr. 528]. She was diagnosed with right knee pain, low back pain, morbid obesity, deconditioning, and various psychiatric disorders. [Id.].

Dr. Robert Blaine conducted a physical examination on May 27, 2011. [Tr. 350]. Dr. Blaine noted that Plaintiff had a "histrionic affect" and was worried about him touching her without sanitizing his hands first. [Tr. 351]. He found that Plaintiff had "exaggerated pain

8

responses and start[ed] crying at one point during the examination. She does appear to give a reasonable effort to comply with the examination except as noted above." [Id.]. Dr. Blaine noted that Plaintiff's musculoskeletal exam revealed full range of motion in her thoracolumbar spine, elbows, wrists, and hips, although her "[s]traight leg raise produces low back pain at 60 degrees bilaterally." [Tr. 351-52]. During her neurological exam, Dr. Blaine found that Plaintiff's gait was antalgic, single-leg stand was normal, she had poor balance, refused to attempt the heel or toe walk, and squatted "one quarter of the way into the floor while holding the examining table." [Id.]. Plaintiff's grip, flexor, and extensor strength was normal. [Id.]. Dr. Blaine diagnosed back, right leg, and foot pain and dizziness and found that she was "questionably capable of handling her own affairs if approved for disability." [Id.]. Dr. Blaine submitted a medical source statement ("MSS"), [Tr. 353-58], with marked limitations (as interpreted by the ALJ). [See Tr. 23].

Dr. Tracy Allred conducted a psychological evaluation on June 9, 2011. [Tr. 359]. Plaintiff provided a history of mental health issues and psychiatric treatment, but no records were received or reviewed by Dr. Allred. [Tr. 359]. Plaintiff was diagnosed with PTSD by history, OCD, anxiety disorder, and a history of migraines and back and knee pain. [Tr. 362]. Dr. Allred found that Plaintiff was not significantly limited in her ability to understand but she was markedly limited in her ability to sustain concentration and persistence, interact socially, and adapt and tolerate stress due to her PTSD, OCD, and "a mixture of depressive and anxiety symptoms." [Id.]. Dr. Allred's mental status examination was relatively benign, although Plaintiff presented as anxious and "had a hard time completing the evaluation." [Tr. 360]. Dr. Allred found Plaintiff to be "cooperative and the results are thought to be valid and reliable." [Tr. 359]. Plaintiff reported that she quit a job at Taco Bell and that she had "never been fired from a

9

job." [Tr. 360]. Her self-reported daily activities included household chores such as housekeeping and laundry, handling finances, caring for her ten month old child, and preparing meals on her own. [Tr. 361]. Plaintiff stated that she rarely left her home due to anxiety. [Id.].

On June 10, 2011, Dr. Roslynn Webb submitted a medical consultant analysis and found that Plaintiff had "[n]o medically determinable physical impairment." [Tr. 364-68]. On August 9, 2011, Dr. Jayne Dubois submitted a psychiatric assessment, diagnosing Plaintiff with anxiety, PTSD, and OCD. [Tr. 426, 431]. She found Plaintiff had moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace and that she had suffered no periods of decompensation. [Tr. 436]. Non-examining Social Security consultants, Dr. Horace Edwards and Dr. Michael Ryan, concurred in these physical and mental findings, affirming each as written. [Tr. 497, 505].

### B. *Other Evidence*

The ALJ conducted a hearing on November 7, 2012, in which the Plaintiff testified. [Tr. 31-58]. The ALJ questioned the Plaintiff about her work history, noting that she informed a Social Security consultant that she had never been fired from a job. [Tr. 38]. Plaintiff testified that she had been fired from jobs in the past but "can't remember which ones." [Tr. 39]. Plaintiff reported that her anxiety and PTSD resulted from her car accidents, child sexual abuse, and being raped and beaten by a boyfriend when she was a teenager. [Tr. 47-50, 360].

The ALJ issued an unfavorable decision on February 5, 2013. [Tr. 10-30]. The ALJ found that Plaintiff had a RFC to perform light work with additional exertional and nonexertional limitations. [Tr. 17]. In assessing Plaintiff's RFC, the ALJ found that although the Plaintiff's impairments could "cause the alleged symptoms . . . statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons

10

explained in this decision." [Tr. 19]. The ALJ afforded Dr. Blaine little weight, finding his assessment "internally inconsistent in that he indicated that the claimant's pain responses were exaggerated and she had a histrionic [a]ffect yet he gave her a physical residual functional capacity assessment with marked limitations. The claimant's diagnostic testing has produced no evidence to support his limitations." [Tr. 23]. The ALJ also found Dr. Allred's analysis "internally inconsistent with her stated observations of the claimant during the one-time psychiatric evaluations." [Id.].

## V. POSITIONS OF THE PARTIES

Plaintiff argues that the ALJ's RFC assessment is flawed because he did not properly weigh the medical evidence of record. The Commissioner responds that the ALJ's RFC and credibility determination is supported by substantial evidence and that the ALJ weighed the medical evidence in accordance with agency standards.

## VI. ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A. RFC Analysis and Consideration of the Medical Evidence

Plaintiff argues that the ALJ did not properly weigh the medical evidence in assessing Plaintiff's RFC. The Court disagrees. An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence of record. Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. Id. A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's

11

abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting Yang v. Comm'r of Soc. Sec., No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003). However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to her functional and physical limitations. Simpson v. Colvin, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) adopted by, 3:11-CV-00481, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." Wright v. Astrue, 1:07-CV-226, 2009 WL 890051 (E.D. Tenn. Mar. 26, 2009) (quoting Bailey v. Comm'r of Soc. Sec., 1999 WL 96920, *4, (6th Cir. Feb. 2, 1999)).

Under the Social Security Act and its implementing regulations, an ALJ will consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). If the opinion of a treating physician is supported by the record, it is entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the

12

following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

Non-treating physicians are not subject to controlling weight. Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2-6), the same factors used to analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); Sommer v. Astrue, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

Although an ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled, 20 C.F.R. § 404.1527(b), she need not specifically address each piece of evidence to adequately consider the record in its entirety. See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999)

13

("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)).

The Plaintiff concedes that there are no treating physician opinions of record, but argues that the ALJ erred in not clarifying the weight assigned to all non-treating physicians. The Plaintiff further contends that the weight assigned to Dr. Allred's opinion was unsupported by the evidence. The Court disagrees and finds that the ALJ was under no obligation to specify the weight assigned to each non-treating physician. Neither Dr. Blaine, Dr. Allred, nor the Social Security consultants were treating physicians subject to controlling weight, and the Court finds that the ALJ's consideration of the medical evidence satisfies the criteria set forth in 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6), and 404.1529. The Court finds that the ALJ properly considered many of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6) in weighing the medical evidence, and although he did not specifically address the non-treating and non-examining physician opinions, an ALJ is not required to specifically note each piece evidence or address every factor in weighing the medical evidence. See Klimas v. Comm'r of Soc. Sec., No. 1:10–cv–666, 2012 WL 691702, at *1 (W.D. Mich. Mar. 1, 2012) ("'The ALJ is not required, however, to explicitly discuss each of the § 404.1527 factors. Instead, the record must reflect that the ALJ considered those factors relevant to his assessment.'") (citing Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) and Undheim v. Barnhart, 214 F. App'x 448, 450 (5th Cir. 2007)); Paseka v. Comm'r of Soc. Sec., No. 1:09–CV–1073, 2011 WL 883701, at *1–2 (W.D. Mich. Mar. 11, 2011).

Here, the ALJ noted Plaintiff's length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supported the opinions, the

14

opinions' consistency with the record as a whole, and other factors, such as Plaintiff's credibility and compliance with treatment plans, which tended to support or contradict the opinions. [See Tr. 17-23]; 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). The ALJ discussed Plaintiff's medical history in detail, considering her testimony, treatment records of her automobile accident and orthopedic treatment, examinations by Drs. Blaine and Allred, psychiatric treatment records, lack of compliance with medication and missed appointments, diagnostic test results, and Plaintiff's self-reported daily activities. [See Tr. 17-23]. Even though the ALJ was under no such obligation, he discussed Drs. Blaine and Allred's assessments in detail, thoroughly explaining the weight assigned to each opinion. [See Tr. 23] (granting Dr. Blaine little weight and finding his assessment "internally inconsistent" due to Plaintiff's exaggerated pain responses, "histrionic [a]ffect," and lack of any substantiating evidence in Plaintiff's diagnostic test results); [id.] (determining that Dr. Allred's analysis was "internally inconsistent with her stated observations of the claimant during the one-time psychiatric evaluation."). The ALJ went into great detail in explaining his consideration of Dr. Allred's opinion, considering his assessment of marked limitations in Plaintiff's ability to sustain concentration and persistence, interact socially, and adapt to and tolerate stress. [See Tr. 23, 362]. The ALJ found that Dr. Allred's evaluation was inconsistent with such extreme limitations and unsupported by the medical evidence. [Tr. 23]. Specifically, the ALJ noted that that:

> Per her own report, the claimant's psychomotor behavior was restless and her attitude cooperative. Her speech was normal and she presented with a constricted affect and anxious mood. Hallucinations and delusions were not evident. Thought processes were logical and she was partly alert with orientation to place and person. Suicidal and homicidal thought content was denied . . . None of these observations support the marked limitations assessed by Dr. Allred. Additionally, when the claimant's repeated pharmacological noncompliance and lack of episodes of

15

> decompensation are considered, it is difficult to assess her [as] having more than minimal limitations.

[Id.].

Although Plaintiff argues that the ALJ's interpretation of Dr. Allred's opinion was incorrect based on Plaintiff's psychiatric treatment records and diagnoses supporting Dr. Allred's assessed marked limitations, [see Doc. 14 at 9-10], the Court notes that any disagreement in interpretation is inconsequential. It matters not whether the Plaintiff or this Court would have found differently. See Crisp, 790 F.2d at 453 n.4. The only questions before the Court are whether the ALJ adhered to agency procedure and formulated an opinion supported by substantial evidence. The Court finds in the affirmative on both counts. In crafting his opinion, the ALJ provided thorough analysis and explanation, adhering to agency protocol at each step of the disability analysis, including Plaintiff's RFC assessment.

In regards to Plaintiff's contention that the ALJ erred in not explaining the weight assigned to the other non-treating physicians, the Court finds that not only was the ALJ under no such obligation, any further consideration would have had no impact on his ultimate decision. The record contains four additional non-treating and non-examining consultant opinions, only two of which offer any substantive assessment. The ALJ specifically stated that he considered all the medical evidence of record, and even if he had specifically explained his consideration of Dr. Webb or Dr. Dubois, neither of their opinions support a finding of disability. Dr. Webb found that Plaintiff had "[n]o medically determinable physical impairment[,]" [Tr. 364], and Dr. Dubois assessed that Plaintiff had only moderate limitations in activities of daily living, social functioning, maintaining concentration, persistence, and pace, and that she had suffered no periods of decompensation. [Tr. 436]. The only other non-treating and non-examining opinions

16

are those of Drs. Edwards and Ryan, both of whom simply affirmed the opinions of the other Social Security consultants. [Tr. 497, 505]. As explained above, the ALJ need not specifically address every piece of evidence in his opinion in order to fully consider the record. See Loral Def. Sys.-Akron, 200 F.3d at 453. Therefore, the ALJ was under no obligation to explain the weight assigned to Drs. Webb, Dubois, Edwards, or Ryan. Yet even if he had, their opinions would support a finding of not disabled and are consistent with the ALJ's RFC assessment.

The Court finds that the ALJ properly considered the medical evidence and adhered to 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6) in weighing the opinions of Drs. Blaine and Allred. The ALJ fully considered Plaintiff's medical record, diagnostic test results, subjective complaints, noncompliance with treatment plans, and daily activities. [See Tr. 17-23]. Agency procedure requires no more and neither shall this Court. Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

### B. Credibility Assessment

The Commissioner contends that the ALJ's credibility determination is intertwined in his RFC assessment. [Doc. 16 at 4]. Although the Plaintiff did not specifically raise this issue, the Court agrees with the Commissioner that Plaintiff's credibility assessment directly influenced the ALJ's RFC determination and the weight assigned to Drs. Blaine and Allred. In determining a RFC, the ALJ considers the record as a whole, including the medical evidence and all factors regarding the claimant's credibility. See Rudd, 531 F. App'x at 728; Walters, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial

17

evidence. Id. In deciding whether the objective medical evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" Claiborne-Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843-44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998) (emphasis in the original)).

Here, the ALJ found that although the Plaintiff's impairments could "cause the alleged symptoms . . . statements concerning the intensity, persistence, and limiting effects of these

18

symptoms are not entirely credible for the reasons explained in this decision." [Tr. 19]. In making this assessment, the ALJ addressed many of the factors set forth in Social Security Ruling 96-7p. See 1996 WL 374186, at *3. Specifically, the ALJ compared the medical opinions with Plaintiff's testimony and demeanor during the administrative hearing, subjective complaints of pain, lack of compliance with her medication, diagnostic test results, and self-reported daily activities, [Tr. 17-23], finding that "when the claimant's repeated pharmacological noncompliance and lack of episodes of decompensation are considered, it is difficult to assess her [as] having more than minimal limitations." [Tr. 23]. The ALJ noted that Plaintiff received conservative treatment following her automobile accident and that her diagnostic test results were negative for any serious injury. [Tr. 19, 22-23]. He further considered her lack of compliance in refilling and taking her Zoloft, despite her report that the medication eased her anxiety. [Tr. 22]. The ALJ also noted her missed physical therapy sessions due to financial constraints and her conservative treatment for her gastrointestinal issues. [Tr. 22-23]. Finally, in weighing the opinion of Dr. Blaine, the ALJ considered Plaintiff's exaggerated pain responses and "histrionic [a]ffect." [Tr. 23].

Based on this analysis, the Court finds that the ALJ's credibility assessment is supported by substantial evidence and adheres to the standards set forth in Social Security Ruling 96-7p. See Tyra v. Soc. Sec. Admin., 896 F.2d 1024, 1030 (6th Cir. 1990) (explaining that "the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict" the alleged severity of symptoms). In Tyra, the Sixth Circuit found that the plaintiff's subjective complaints were properly dismissed "because the medical and testimonial

19

evidence failed to confirm the severity of the pain." Id. The ALJ made similar findings here, based on his consideration of the record as a whole, and the Court is equally persuaded.

The Court finds that the ALJ's RFC analysis was thorough, detailed, and consistent with agency requirements. See Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (an ALJ's credibility assessment "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). In this case, the ALJ has met that burden. It is clear from his decision that the ALJ weighed the evidence in its entirety in determining Plaintiff's RFC. The ALJ properly weighed the medical evidence and considered the record as a whole in determining Plaintiff's RFC. The Court finds the ALJ's decision to be supported by substantial evidence, and Plaintiff's argument to the contrary is without merit.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Judgment on the Pleadings **[Doc. 13]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED.**

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).